UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARVIN H.,[1]<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 2:22-cv-7961-JDE<br><br>MEMORANDUM OPINION AND<br>ORDER |

　　　Marvin H. ("Plaintiff") filed a complaint on November 1, 2022, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issue in dispute on August 1, 2023. The matter now is ready for decision.

---

　　　[1]　Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## BACKGROUND

Plaintiff filed his application for DIB on June 9, 2015, alleging disability starting on December 18, 2014. Administrative Record ("AR") 435, 438, 514, 518. After Plaintiff's application was denied initially and on reconsideration (AR 177, 189), an Administrative Law Judge ("ALJ") held a hearing on October 27, 2017. AR 116-47. Plaintiff, represented by counsel, testified, as did a vocational expert ("VE"). AR 116-17. On March 2, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. AR 190-202.

On October 28, 2019, the Appeals Council granted a request for review, vacated the ALJ's decision, and remanded Plaintiff's case. AR 207-10. A telephonic hearing was held on October 2, 2020, before a different ALJ. AR 87-115. Plaintiff, represented by counsel, testified, as did the VE who testified at the prior hearing. AR 87-88. On December 30, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled. AR 212-25.

On June 8, 2021, the Appeals Council again granted a request for review, vacated the ALJ's decision, and remanded Plaintiff's case. AR 231-35. A telephonic hearing was held on January 6, 2022, before a different ALJ. AR 63-86. Plaintiff, represented by counsel, testified, as did a different VE. AR 63-64. On March 23, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled. Id. at 19-55.

The ALJ determined that Plaintiff last met insured status requirements of the Social Security Act ("SSA") on September 30, 2019. AR 29. Plaintiff engaged in substantial gainful activity during part of the period between his alleged onset date of December 14, 2014, and the date last insured of September 30, 2019, but there were some continuous 12-month periods during which he did not. AR 31. The ALJ found that between the alleged onset date and the date last insured, Plaintiff had the following severe medically determinable

impairments: left eye blindness secondary to chronic retinal detachment with extensive proliferative vitreoretinopathy; right eye cataract, status post cataract surgery; and epilepsy. AR 34. Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment. AR 38. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform medium work[2] with the following limitations:

> [Plaintiff] could sit, stand, and/or walk for a total of six hours each in an eight-hour workday with normal breaks; was unable to climb ladders, ropes, or scaffolds; was unable to work with very small objects such as beads or needles; was able to read small prints up to 12-point size with glasses; could perform work that involves up to occasional near acuity which the Dictionary of Occupational Titles ("DOT") defines as clarity of vision at 20 inches or less; could perform work that involves up to occasional depth perception and accommodation in accordance with the DOT's definitions; could avoid ordinary workplace hazards such as doors ajar; could not be exposed to bright lights such as those in a sports stadium; and was precluded from any exposure to extreme heat or humidity, unprotected heights, or dangerous moving machinery.

AR 39-40.

The ALJ found that during the period at issue, Plaintiff was capable of performing his past relevant work as a caregiver (DOT 354.377-014), as that work is generally performed in the national economy and as it was actually performed by Plaintiff at the light level. AR 54. The ALJ concluded, therefore,

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

3

1    that Plaintiff has not been under a "disability," as defined in the SSA, at any

2    time from the alleged onset date through the date last insured. AR 54.

3         On September 9, 2022, the Appeals Council denied Plaintiff's request for

4    review, making the ALJ's March 23, 2022 decision the agency's final decision.

5    AR 7-9.

## II.

## LEGAL STANDARDS

### A.    Standard of Review

9         Under 42 U.S.C. § 405(g), this Court may review a decision to deny

10   benefits. The ALJ's findings and decision should be upheld if they are free

11   from legal error and supported by substantial evidence based on the record as a

12   whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as

13   amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial

14   evidence means such relevant evidence as a reasonable person might accept as

15   adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035

16   (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id.

17        To assess whether substantial evidence supports a finding, the court

18   "must review the administrative record as a whole, weighing both the evidence

19   that supports and the evidence that detracts from the Commissioner's

20   conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the

21   evidence can reasonably support either affirming or reversing," the reviewing

22   court "may not substitute its judgment" for that of the Commissioner. Id. at

23   720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even

24   when the evidence is susceptible to more than one rational interpretation, [the

25   court] must uphold the ALJ's findings if they are supported by inferences

26   reasonably drawn from the record."), superseded by regulation on other

27   grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

28   Lastly, even if an ALJ errs, the decision will be affirmed if the error is harmless

4

(<u>Molina</u>, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." <u>Brown-Hunter</u>, 806 F.3d at 492 (citation omitted); <u>Smith</u>, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").

**B.   The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is disabled. <u>See</u> <u>Ford v. Saul</u>, 950 F.3d 1141, 1148-49 (9th Cir. 2020); <u>Molina</u>, 674 F.3d at 1110.

First, the ALJ considers if the claimant works at a job that meets the criteria for "substantial gainful activity." <u>Molina</u>, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to assess whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. <u>Id.</u> If so, the ALJ proceeds to a third step to assess whether the impairments meet or equal any of the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, rendering the claimant disabled. <u>See</u> <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1001 (9th Cir. 2015) (as amended). If the impairments do not meet or equal a listed impairment, before moving to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. <u>See</u> 20 C.F.R. § 404.1520(a)(4); Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to determine if, in light of the RFC, the claimant can perform past relevant work as actually or generally performed. <u>See</u> <u>Stacy v. Colvin</u>, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work,

in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. § 404.1566(a). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Tackett, 180 F.3d at 1099; see also Woods v. Kijakazi, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

The claimant generally bears the burden at steps one through four to show he is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.

### DISCUSSION

The parties present one disputed issue: whether the ALJ's step four determination is supported by substantial evidence due to an alleged failure to reconcile inconsistencies between the RFC and the DOT. Jt. Stip. at 7.

Plaintiff contends that the ALJ erred by failing to resolve an apparent conflict between the RFC and the description of Plaintiff's past relevant work in the DOT, and the error was not harmless because the ALJ did not proceed to step five of the analysis. Id. at 8-11. Defendant counters that there was nothing for the ALJ to resolve because no conflict existed. Id. at 13-14.

**A.**   <u>Applicable Law</u>

At step four, the ALJ configures the claimant's RFC and determines whether the claimant can perform his past relevant work. <u>Johnson v. Colvin</u>, 31 F. Supp. 3d 1262, 1272 (E.D. Wash. 2014). In particular, the ALJ must compare the claimant's RFC with the physical and mental demands of the past relevant work to determine whether the RFC would permit a return to the claimant's past occupation. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

At steps four and five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform his past relevant work or other jobs in light of his RFC. 20 C.F.R. §§ 404.1566(e), 404.1569, 404.1566(d); <u>Kilpatrick v. Kijakazi</u>, 35 F.4th 1187, 1192-93 (9th Cir. 2022) (step five); <u>Johnson</u>, 31 F. Supp. 3d at 1273 (step four). As part of this process, occupational information provided by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2 (Dec. 4, 2000). When there is an apparent conflict between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict from the VE before relying on the VE's testimony to support a determination or decision about whether the claimant is disabled. <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ must first determine whether a conflict exists. <u>Id.</u> If it does, the ALJ must determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. <u>Id.</u>

To trigger the obligation to inquire further, the conflict must be "obvious or apparent." <u>Lamear v. Berryhill</u>, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting <u>Gutierrez v. Colvin</u>, 844 F.3d 804, 808 (9th Cir. 2016)); <u>see also</u> <u>Zavalin v. Colvin</u>, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that

7

appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency");  SSR 00–4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE or [vocational specialist or 'VS'] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

**B.   Analysis**

Plaintiff contends that the ALJ's determination that Plaintiff was able to perform his past relevant work as a caregiver was inconsistent with the RFC, which provided that Plaintiff "was precluded from any exposure to extreme heat or humidity." Jt. Stip. at 8. He points out that according to the DOT, one of the requirements of the caregiver/home attendant position is exposure to wet and/or humid conditions up to one third of the time. Id.; see DICOT 354.377-014 (Home Attendant: "Wet and/or Humid: Occasionally – Exists up to 1/3 of the time").

The VE testified that a hypothetical individual of Plaintiff's age, education, and past work experience, with an RFC as determined by the ALJ, could perform Plaintiff's past relevant work as a home attendant, as listed in DICOT 354.377-014. AR 82. When asked whether this testimony was consistent with the DOT, the VE responded, "Yes." Id. When asked whether there were any inconsistencies or discrepancies between her testimony and the DOT, the VE responded, "No." Id. at 83.

In his decision, the ALJ noted that the DOT description for the caregiver/home attendant occupation includes occasional exposure to wet and/or humid conditions, and "one might arguably contend" that this provision exceeds the RFC restriction precluding Plaintiff from any exposure to extreme heat or humidity. AR 51 n.23. He pointed out, however, that "the DOT does not explicitly address 'extreme heat or humidity'" and found no

clear conflict. Id. The ALJ acknowledged that the pertinent restriction "is perhaps not the clearest," but stated that he saw no reason to reject the VE's opinion on this point. Id. He concluded that even if Plaintiff had made this argument (and he did not), it "would not win the day, let alone change the outcome," given the ALJ's other findings. Id.

Plaintiff argues that the ALJ's discussion of the issue did not satisfy his obligation to provide a reasonable explanation for the apparent conflict because the ALJ did not elicit any testimony from the VE on this point and thus could not draw any inferences from the VE's testimony to support his finding. Jt. Stip. at 9-10. Defendant argues that there was no conflict, apparent or otherwise. Id. at 13-14.

"For a difference between an expert's testimony and the [DOT]'s listings to be fairly characterized as a conflict, it must be obvious or apparent[,]" meaning that "the testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected." Gutierrez, 844 F.3d at 808. Plaintiff's RFC precludes any exposure to "extreme heat or humidity," but does not limit exposure to non-extreme levels of heat or humidity. AR 40. The DOT description for the job requirements for a home attendant specifically states that exposure to extreme heat is not present and exposure to wet and/or humid conditions exists occasionally, but the DOT does not mention extreme humidity. DICOT 354.377-014.  Thus, there is no conflict.

Plaintiff maintains that the RFC's limitation on exposure to "extreme heat or humidity" does not refer to extreme humidity but "just humidity." Jt. Stip. at 15. He points out that the state agency consultants only mentioned "humidity." Id. However, the state agency consultants described Plaintiff as "unlimited" with respect to both "extreme heat" and "humidity" (AR 172, 185), so their findings are not illuminating as to whether the RFC's restriction on "extreme heat or humidity" encompasses less-than-extreme humidity.

In essence, the parties disagree regarding whether the adjective "extreme" in the RFC modifies only "heat," or modifies both "heat" and "humidity." As a matter of textual construction, the modifier "extreme" in the phrase "exposure to extreme heat or humidity" applies to both "heat" and "humidity." See Spears v. Berryhill, No. EDCV 16-2333-JPR, 2018 WL 707989, at 10 (C.D. Cal. Feb. 5, 2018) (rejecting argument that modifier "moving" in phrase "moving mechanical parts or machinery" applied only to "mechanical parts" and not to "machinery"). The RFC does not restrict Plaintiff's exposure to normal humidity levels; it only restricts Plaintiff's exposure to extreme humidity.

Indeed, this reading flows naturally from the context in which the phrase appears. The RFC precludes Plaintiff "from any exposure to extreme heat or humidity, unprotected heights, or dangerous moving machinery." AR 40. If the RFC precluded Plaintiff from exposure to normal humidity, one would expect the phrase to read "any exposure to extreme heat, humidity, unprotected heights, or dangerous moving machinery."

Thus, the RFC's restriction on exposure to "extreme heat or humidity" does not conflict with the DOT's description of the caregiver/home attendant position as involving occasional exposure to wetness and/or humidity up to one third of the time. Nothing in the DOT's description of the duties of a caregiver/home attendant suggests exposure to "extreme" humidity.[3]  Based

---

[3] The DOT describes the duties of a home attendant as:
Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies

on the DOT's description, the only tasks involving exposure to any humidity at all would be assisting the patient with bathing, washing the patient's laundry, and possibly cleaning the patient's quarters. DICOT 354.377-014. Nor is there any evidence in the record that the caregiver/home attendant position as actually performed by Plaintiff involved exposure to extreme humidity.

Since there was no apparent conflict between the DOT and the VE's testimony that an individual "precluded from any exposure to extreme heat or humidity" can perform Plaintiff's past relevant work of caregiver (AR 82), the ALJ was not obliged to seek further explanation from the VE or to resolve a conflict. Moreover, in his decision the ALJ acknowledged and rejected a possible argument that a conflict existed. AR 51 n.23.

The Court finds that the ALJ did not err and that the ALJ's step four determination is supported by substantial evidence.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: August 16, 2023

JOHN D. EARLY
United States Magistrate Judge

---

preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients. DICOT 354.377-014.